### BAYRHOFF *v.* ROHDE.

*(Common Pleas of New York City and County, General Term.* January 4, 1892.)

EQUITY—REFORMATION OF CONTRACTS—MUTUAL MISTAKE.

Forty-eight notes and a chattel mortgage to secure the same contained no provision for interest, but the payee claimed that by the agreement under which they were given interest was to be paid. The maker admitted a conversation as to interest, but asserted that it was after execution and delivery of the notes and mortgage. The maker paid 19 of the notes with interest, and four others without interest, which were indorsed with the amount received on account and retained by the payee, with the consent of the maker; but thereafter the maker refused to pay further interest, on the ground that none was provided for in the notes or mortgage. *Held,* that on these facts, and proof of circumstances showing that the omission to insert the words "with interest" in the notes and mortgage was by mutual mistake, they should be reformed by making them payable with interest.

Appeal from special term.

Action by William Bayrhoff against Adolph Rohde to reform notes and a chattel mortgage. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER, J.

*William D. Landray,* (*Samuel Cohn,* of counsel,) for appellant. *Lorenz Zeller* and *John Fennel,* for respondent.

BOOKSTAVER, J. This action was brought to reform a chattel mortgage, and 48 promissory notes secured by it, by adding the words "with interest." The sole question to be determined on this appeal is whether the original agreement between the parties was that the notes were to bear interest or not, and, if they were, was the provision for interest left out of the writings through mutual mistake? There is no claim on the part of the defendant that he was induced to give the notes through any fraud or misrepresentation. Indeed, there could not well have been. The notes were given by him to the plaintiff on the sale by the latter to the former of a drug-store at No. 177 Allen street, this city. The defendant was well acquainted with the drug business. He had been in this store for more than $2\frac{1}{2}$ months, first as clerk, and then as general manager for the plaintiff, before he purchased it. He paid absolutely nothing for the business, except the notes in controversy, and they were to be paid out of the profits. There is no conflict of evidence as to the terms of the sale, or that notes were to be given in payment. The defendant admits that at the time he purchased he had no means to pay with; that he expected to pay out of what he could make by continuing the business. It is also conceded that at the time of the sale plaintiff had purchased another drug-store on Third avenue, for which he had paid $3,300 cash, and had given his note for $3,000 more, which bore 6 per cent. interest. The plaintiff testifies that he told defendant these facts, and that he was paying interest on his notes, and would expect the defendant to pay him interest on his, so that the interest he would receive would about cover the interest he had to pay. He also testifies that he told the defendant that if he could at any time give him cash it would save interest to both. According to his testimony, defendant fully understood he was to pay interest. Indeed, defendant does not deny that there was a conversation about interest, and his version as to what was said does not materially differ from plaintiff's, except that he claimed that this conversation did not take place until after the chattel mortgage and notes were executed and delivered; so the real conflict as to the interest is narrowed down to the time when it took place, whether before

or after the notes were given. The testimony of defendant's wife can scarcely be regarded as corroborating her husband. It is admitted all around she was not present when the bargain was made. Her testimony does not materially differ from either the plaintiff's or her husband's, only it is noticeable that in several phrases she repeats her husband's expressions ,with parrot-like precision. It is also noticeable that both testify that the defendant brought up the question of interest himself. Why should he have done this if there had been no agreement about it? It is also apparent from the testimony that plaintiff treated defendant with much liberality in the transaction. The price agreed upon was $2,500. The plaintiff had before the sale received from defendant about $100 as his profits in the business while the latter was managing it for him. This he allowed on the purchase of the store, and took 48 notes of even date for $50 each, payable at intervals of one month. Even on the first of these he took less than its face, being about $37,—the amount defendant then had on hand as plaintiff's profits when the transaction was closed. Thereafter the defendant, of his own accord, for the space of nearly two years, computed the interest on each note as it fell due, and sent principal and interest to plaintiff, and received back the notes so paid. In June, 1888, the sale having been made about August 1, 1886, the defendant's business having fallen off, he asked the plaintiff as a favor to waive the immediate payment of the interest, promising to pay such interest when the principal sum had been paid. To this the latter assented. Under such circumstances notes Nos. 24 to 27 were paid without interest, and an indorsement was put on each of these notes, showing that the interest remained unpaid, and defendant accepted receipts showing that the principal of the notes had been paid, but that the interest remained due; and these notes plaintiff kept, with defendant's consent, although all the preceding notes had been surrendered when principal and interest had been paid.

The first intimation defendant gave the plaintiff that he did not regard himself liable to pay interest was not until the 14th of November, 1888, nearly two years and a half after the transaction; and then it was not in a personal interview to talk over the matter, as would seem a natural way, but by the following rather extraordinary letter.

"*Esteemed Mr. Bayrhoff:* On your next visit to collect note due, have the goodness to bring with you that note, as well as the four notes already paid, and deliver them to me. As I pay in full the sum for which the text and amount of the notes read, there lies in the receipts heretofore given to me by you with the words, 'Received on account,' a contradiction. The note made out by me is the legal proof of my indebtedness, and as soon as I pay in full the sum mentioned in the text I am entitled also; according to the laws of this state, to unconditional possession thereof.

"Respectfully,                    A. G. ROHDE."

Not a word is said in it about any misrepresentation, nothing about his paying interest for two whole years under a misunderstanding of the law or of the agreement between the parties, but he bases his refusal to pay interest solely on the ground that by the text of the notes he was not required to do so. The letter shows that he must have very fully and clearly understood his legal liability in the premises during all the two years he had been paying interest, or that he had received a sudden illumination from some outside source. If the former was the case, then the inference is irresistible that he paid interest because he had agreed to; if the latter, then it strongly leads to the inference he must at the same time have learned of the necessity of fixing the conversation about interest at a time subsequent to the execution of the notes. Either supposition tends strongly to show the plaintiff has testified to the correct version of the transaction. The circumstances under which the papers were drawn by the attorney, and the subsequent execution of them by the parties, sufficiently account for the omission to insert the

words "with interest" at the time. We are well aware that before a written contract can be amended or altered the proof of the mistake should be clear and convincing; for the written contract executed by the one party, and accepted by the other, affords strong evidence that it speaks the agreement and intention of the parties. But in this case the interpretation which the parties themselves gave to the contract, and under which they acted for two years and more, the repeated promises of the defendant to pay interest in the end, and the other facts before pointed out, in our judgment outweigh the inference from the written instruments, and we are of the opinion that the learned judge who tried this case was fully justified in rendering the judgment he did, and that it should be affirmed, with costs.